# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**3M INNOVATIVE PROPERTIES COMPANY** and **3M COMPANY**,

Plaintiffs,

vs.

**ENVISIONWARE, INC.,**

Defendant.

Civil No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs 3M Innovative Properties Company ("3M IPC") and 3M Company ("3M"), for their Complaint against Defendant EnvisionWare, Inc., ("EnvisionWare") allege as follows:

## PARTIES

1.    Plaintiff 3M IPC is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 3M Center, St. Paul, MN 55133.

2.    Plaintiff 3M is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 3M Center, St. Paul, MN 55133.

3.    Defendant EnvisionWare, on information and belief, is a corporation organized and existing under the laws of the state of Georgia, with its principal place of business at 2810 Premiere Parkway Suite 350, Duluth, Georgia 30097.

## BACKGROUND OF 3M'S INVENTIONS

4.      3M has been the leading innovator in library technology for the past forty

years.  3M has invested enormous resources in developing technologies that have

fundamentally changed—and improved—the way libraries work today.  3M introduced

the electromagnetic security systems that have helped secure over six billion library items

across the world.  3M developed the self-service library systems that are used in

thousands of libraries across the world.  3M developed the software communications

protocol that allows library circulation software and the equipment located throughout the

library to talk to each other—and made that protocol available for free to the industry.

More recently, 3M has made pioneering improvements to the functionality of self-service

library systems that allow the library to better manage patron fines and fees.  And 3M has

been the leader in introducing fully integrated RFID systems into the library

environment, which dramatically improve the ability of libraries to track, shelve, and

search for library materials.  Through these innovations, 3M has changed the face of the

modern library and has helped free librarians to be librarians.

### *3M Tattle-Tape™ Magnetic Security Strips*

5.      Starting in the 1960s, 3M introduced Tattle-Tape™ Magnetic Security

Strips—small magnetic security devices that are affixed to library books, videos and

other materials.  Tattle-Tape™ Security Strips work together with detection systems

positioned at library exits to prevent the theft and loss of library materials.

6.      When an item is checked into a library, the magnetic material in the Tattle-

Tape™ Security Strip is activated with an electromagnetic device.  If a library patron

attempts to pass through a detection system at a library exit with an active Tattle-Tape™ Security Strip, the detection system will sound an alarm. When a patron or library staff member properly checks out an item, the Tattle-Tape™ Security Strip is deactivated and a patron will pass through the detection system without incident.

7.    3M Tattle-Tape™ Security Strips are the most common security device used in libraries today. Since the advent of this technology, more than thirty thousand libraries worldwide have implemented Tattle-Tape™ strip technology and more than six billion library items have been secured with Tattle-Tape™ Security Strips.

### 3M SelfCheck™ Systems

8.    In the early 1990s, 3M introduced the first self-service library terminals under the name SelfCheck™ Systems. A SelfCheck™ System, such as the one pictured below, is a system that allows patrons to check materials in and out of a library without assistance from a library staff member.



**3M SelfCheck™ System (R-Series)**

9.     The SelfCheck™ System improves the flow of materials through a library and increases staff productivity. Most importantly, the SelfCheck™ System saves librarians from the time-consuming clerical tasks of processing check-outs and frees them to work with patrons to research, locate, and use library resources.

10.     3M's SelfCheck™ Systems have fundamentally changed the modern library environment. 3M has been the market leader for library self-service for the past 15 years, and more than nine thousand SelfCheck™ Systems have been installed in libraries across the world.

### 3M Standard Interchange Protocol (SIP)

11.     In 1993, 3M introduced another pioneering improvement in library technology with the launch of the 3M Standard Interchange Protocol (SIP). SIP is a software protocol that enables a library's circulation software system to "talk to" other devices in a library, such as self-service terminals. 3M independently developed SIP, but proposed it as the library industry standard and made it freely available to all users in the industry, including libraries, hardware vendors and circulation software providers.

12.     3M developed SIP to offer many benefits to libraries, including the ability for various circulation software systems to work seamlessly with hardware from a variety of different vendors. Thus, regardless of the circulation software used by a library or the hardware in operation, SIP allows the library's systems to communicate with each other easily. Today, SIP is the industry standard and supported by the major library circulation software and hardware companies.

***3M's Development of RFID Technology and
Improvements to 3M's SelfCheck™ Systems***

13.     In the mid-1990s 3M began a multi-year, multi-million dollar research and

development project to improve library systems technology.  One part of 3M's effort

centered on creating pioneering functions that enhance self-service library systems, such

as 3M's SelfCheck™ Systems.  The other part focused on the development of Radio-

Frequency Identification (RFID) technology for the library environment.  Together, 3M's

efforts resulted in the technology and intellectual property at issue in this lawsuit.

14.     As part of this research and development project, 3M invented several new

features to improve the efficiency and overall usefulness of 3M's SelfCheck™ Systems.

3M has implemented a number of these features in its more recent SelfCheck™ Systems.

One such feature is commonly referred to as "Fines and Fees," and allows a library

patron to identify and/or pay any fines or fees through a self-service system without

assistance from the library staff.  Another feature is typically called "Store and Forward."

This feature allows a self-service terminal to store library transactions during times when

the connection between the terminal and the library's computer network is down, and

then forward the stored transaction information when the connection has been restored.

15.     As with the original SelfCheck™ Systems, the "Fines and Fees" and "Store

and Forward" features, along with a number of other pioneering features, allow librarians

to use their library expertise to assist patrons instead of spending time on routine, time-

consuming clerical tasks.

16.     3M included several of the new features it invented as part of its research

and development efforts in a patent application filed in April 1998.  Based on this initial

application, the United States Patent and Trademark Office has issued six separate patents over the last seven years: United States Patent Numbers 6,369,709; 6,464,138; 6,524,070; 6,549,141; 6,750,777; and 6,857,568.

17.    3M's research and development efforts in the mid-1990s also focused on emerging technology called Radio-Frequency Identification (RFID). RFID systems generally involve at least two components—a tag and a reader. The RFID tag includes a small integrated circuit and an antenna. When an RFID reader communicates with an RFID tag, the information stored on the tag's integrated circuit can be transmitted via the antenna to the RFID reader. The information stored on a tag generally includes data that identifies or describes the item to which the antenna is attached, and can be used to obtain further information about that item from the library circulation system.

18.    3M's inventors identified a number of effective uses for RFID systems in the library. For example, they conceived of the idea of using a handheld RFID reader to perform an operation commonly called "shelf order" using a handheld unit. Under this procedure, the order in which books should be found on a library shelf (shelf order) can be loaded into the memory of a handheld RFID reader. Then, a library staff member uses the handheld device to scan the RFID tags located in the books on the particular library shelf to determine whether the books correspond to the proper shelf order. When the RFID tag on a book that is in the wrong position is detected, the handheld reader notifies the staff member.

19.    Some RFID readers are capable of "reading" a number of RFID tags substantially simultaneously, and 3M's inventors also conceived of using a handheld

RFID reader to read the RFID tags of numerous library items at the same time. This can be useful when using a feature generally referred to as "inventory," when the user simply wants to collect information regarding some or all of the items that are present in the library. Because taking the inventory of a library had previously been a massive effort for the library staff, this feature also enabled the library staff to work much more efficiently.

20.    3M conceived of a number of methods for obtaining and using the data stored on RFID tags associated with library materials. These methods provide library staff with powerful tools for enhancing productivity and maintaining their collections.

21.    3M's inventors also researched and developed the hardware products, e.g., RFID tags and readers, necessary for the effective use of RFID technology in the library environment. 3M's RFID products include an RFID-enabled SelfCheck System, a handheld RFID reader and an RFID-enabled library staff workstation that all work together with the RFID tags on materials to form an integrated RFID system for libraries. That system provides libraries with the equipment and supplies necessary to place RFID tags on library materials, shelve the materials in the proper order, locate materials that have been misplaced on the shelves, inventory library materials, and also enables a staff member or patron to check an item out of or into a library or pay fines and fees.

22.    3M included several of the RFID-related inventions in a patent application filed in August 1998. Based on this initial application, the United States Patent and Trademark Office has issued more than eight separate patents over the last eight years:

United States Patent Numbers 6,232,870; 6,424,262; 6,448,886; 6,486,780; 6,768,419; 7,113,094; 7,123,151 and 7,471,205.

23.    By the early 2000s, 3M introduced a number of RFID products incorporating the innovations described above.  The commercial success of 3M's library RFID products is well established, as more than one hundred million items now bear 3M RFID tags and more than eight hundred libraries in the world use 3M's RFID technology.

24.    One of the most successful 3M RFID products is the Digital Library Assistant (DLA), an integrated handheld RFID reader.  3M's DLA is pictured below.



**3M Digital Library Assistant**

25.    The 3M DLA is a user-friendly device that incorporates powerful features to carry out time-consuming and difficult tasks.  Library staff can easily use the DLA to perform numerous innovative functions, some of which are highlighted below:

a.    ***Check Self Order.***  The DLA finds misshelved items and provides graphics that show their current positions and where the items belong.

b.    *Collect Data.*  The DLA can collect information regarding library items and then save this information to a memory card.  This information can then be uploaded to a library's circulation system.

c.    *Pull Items.*  After importing a pull list to the DLA, a staff member can locate and pull the listed library items.  This feature allows library staff to pull items that should be put on hold, or have been designated for removal from the library collection (sometimes referred to as "weed" lists).

d.    *Search for Items.*  The DLA memory card can store search lists that allow the DLA to search for library items.  This feature can efficiently locate items on user-defined lists, such as a missing-items list.

e.    *Shelve Items.*  The DLA can help library staff find the proper shelf location for a particular item.  The DLA uses sounds, lights, text and graphics to signal the correct shelf location for that particular item.

## ENVISIONWARE'S INFRINGING PRODUCTS

26.    EnvisionWare is a company that has been in a position to observe 3M's innovative library system technology for more than a decade.  For years, EnvisionWare primarily sold library management software.  Recently, EnvisionWare began selling library circulation and self-service system products that infringe 3M patents. EnvisionWare prominently features these infringing products in its advertisements.  On its current home page, for example, EnvisionWare shows an integrated "RFID/Barcode Handheld" reader called the "LibraryPDA™."  The home page of EnvisionWare's website is shown below, with the LibraryPDA™ portion highlighted:



27.    Likewise, EnvisionWare advertises a fines and fees feature for its self-service circulation systems, calling it "a powerful tool for increased fee collection." (http://www.envisionware.com/en/onestop_intro).

28.    EnvisionWare advertises these products as critical elements provided in connection with a number of its library circulation systems. EnvisionWare's self-service circulation systems include All-in-One™ systems, OneStop™ desktop systems and kiosks, and Renaissance™ kiosks.

## JURISDICTION AND VENUE

29.    The claims alleged herein arise under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

30.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

31.     This Court has personal jurisdiction over Defendant under Minn. Stat. § 543.19. Defendant transacts business in Minnesota and has otherwise committed acts in and beyond Minnesota causing injury to Plaintiffs in Minnesota.

32.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## PATENTS-IN-SUIT

33.     On May 15, 2001, United States Patent No. 6,232,870 ("the '870 patent"), entitled "Applications For Radio Frequency Identification Systems," was duly and legally issued by the United States Patent and Trademark Office. 3M IPC is the owner by assignment of all right, title and interest in the '870 patent. 3M is the exclusive licensee of the '870 patent. A true and correct copy of the '870 patent is attached as Exhibit A to this Complaint.

34.     On November 26, 2002, United States Patent No. 6,486,780 ("the '780 patent"), entitled "Applications For Radio Frequency Identification Systems," was duly and legally issued by the United States Patent and Trademark Office. 3M IPC is the owner by assignment of all right, title and interest in the '780 patent. 3M is the exclusive licensee of the '780 patent. A true and correct copy of the '780 patent is attached as Exhibit B to this Complaint.

35.     On February 22, 2005, United States Patent No. 6,857,568 ("the '568 patent"), entitled "Terminal For Libraries And The Like," was duly and legally issued by

the United States Patent and Trademark Office.  3M IPC is the owner by assignment of

all right, title and interest in the '568 patent.  3M is the exclusive licensee of the '568

patent.  A true and correct copy of the '568 patent is attached as Exhibit C to this

Complaint.

## COUNT I: INFRINGEMENT OF THE '870 PATENT

36.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 35 as

if fully stated herein.

37.    Defendant is infringing the '870 patent in violation of 35 U.S.C. § 271(a),

(b), and/or (c) by using, actively inducing others to use, and contributing to the use of the

LibraryPDA™ RFID/Barcode Handheld in RFID library systems.

38.    Plaintiffs have suffered monetary damages as a result of Defendant's

infringement of the '870 patent in an amount to be determined at trial.

39.    Plaintiffs have suffered irreparable harm as a result of Defendant's

infringement of the '870 patent and will continue to suffer irreparable harm unless

Defendant is enjoined from infringing the '870 patent.

40.    Plaintiffs have complied with the patent marking provisions of 35 U.S.C. §

287(a).

## COUNT II: INFRINGEMENT OF THE '780 PATENT

41.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 40 as

if fully stated herein.

42.    Defendant is infringing the '780 patent in violation of 35 U.S.C. § 271(a)

by making, using, offering to sell, and/or selling in the United States, and/or importing

into the United States the LibraryPDA™ RFID/Barcode Handheld that is designed for use in RFID systems.

43.     Defendant is infringing the '780 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing others to use or and/or contributing to the use of the LibraryPDA™ RFID/Barcode Handheld in RFID systems.

44.     Plaintiffs have suffered monetary damages as a result of Defendant's infringement of the '780 patent in an amount to be determined at trial.

45.     Plaintiffs have suffered irreparable harm as a result of Defendant's infringement of the '780 patent and will continue to suffer irreparable harm unless Defendant is enjoined from infringing the '780 patent.

46.     Plaintiffs have complied with the patent marking provisions of 35 U.S.C. § 287(a).

## COUNT III: INFRINGEMENT OF THE '568 PATENT

47.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 46 as if fully stated herein.

48.     Defendant is infringing the '568 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States self-service circulation systems including the following: All-In-One™ desktop systems, OneStop™ desktop systems and kiosks and Renaissance™ kiosks.

49.     Defendant is infringing the '568 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing others to use, or contributing to the use by others of, self-

service circulation systems including the following: All-In-One™ desktop systems,

OneStop™ desktop systems and kiosks and Renaissance™ kiosks.

50.    Plaintiffs have suffered monetary damages as a result of Defendant's

infringement of the '568 patent in an amount to be determined at trial.

51.    Plaintiffs have suffered irreparable harm as a result of Defendant's

infringement of the '568 patent and will continue to suffer irreparable harm unless

Defendant is enjoined from infringing the '568 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court:

A.    To enter judgment that Defendant has infringed the '870, '780 and '568

patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

B.    To enter orders preliminarily and permanently enjoining Defendant, and its

respective officers, agents, servants, and employees, and attorneys, and all persons in

active concert or participation with any of the foregoing, who receive actual notice by

personal service or otherwise of the orders, from infringing the '870, '780 and '568

patents in violation of 35 U.S.C. § 271(a), (b), and/or (c);

C.    To award Plaintiffs their respective damages in amounts sufficient to

compensate them for Defendant's infringement of the '870, '780 and '568 patents,

together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. §

284;

D.    To declare this case to be "exceptional" under 35 U.S.C. § 285 and to

award Plaintiffs their attorneys' fees, expenses, and costs incurred in this action; and

E.     To award Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury of any and all issues on which a trial by jury is available under applicable law.

Dated:   June 23, 2009

David J. F. Gross (No. 208772)
James W. Poradek (No. 290488)
Theodore M. Budd (No. 314778)
Lee M. Pulju (No. 321357)
Christopher J. Burrell (No. 386475)
**FAEGRE & BENSON LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Telephone:  (612) 766-7000
Fax:  (612) 766-1600
Email: dgross@faegre.com;
jporadek@faegre.com; tbudd@faegre.com;
lpulju@faegre.com; cburrell@faegre.com

Kevin H. Rhodes (No. 0318115)
Peter L. Olson (No. 0221491)
**3M INNOVATIVE PROPERTIES
COMPANY**
3M Center
P.O. Box 33427
Saint Paul, MN 55144
Telephone: (651) 736-4533
Fax: (651) 737-2948
Email: krhodes@mmm.com;
plolson4@mmm.com

***Attorneys for Plaintiffs 3M Innovative
Properties Company and 3M Company***

fb.us.4151049.01